JOHN E. BANGS ET AL., BOARD OF REGISTRY, ET AL.
*v.* HERMAN J. FEY.

[No. 102, October Term, 1930.]

*Decided October 31st, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*Isaac Lobe Straus,* with whom were *John B. Gray, Jr.,* and *Benjamin Hance,* on the brief, for appellants.

*J. Wilson Ryon,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

Do sections 31 and 32, article 33 of the Code (Act of 1929, ch. 578, sec. 32) violate the provisions of section 5, article 1, of the Constitution of Maryland? The decision of this court, by its *per curiam* order, passed the day·of the argument, October 31st, 1930, was that they do and that the judgment of the Circuit Court for Calvert County should be affirmed.

Lawrence H. O'dell, one of the appellants, had been registered as a voter in the 4th precinct of the 3rd election district of Calvert County, on the 30th day of September, 1930, by John E. Bangs and Merrill C. Ward, the board of registry of the precinct, the applicant for registration making at the time the affidavit before the board of registry required of those coming into Maryland from other states, supported by the affidavits of two citizens of the precinct or district, as provided by section 32 of article 33 of the Code. Subsequent to the registration of Mr. O'dell, and within the time provided by law, Herman J. Fey, a qualified voter of Calvert County, complained under oath that Mr. O'dell was not a resident and not entitled to registration. A hearing was had by the board of registry on the 7th day of October, which O'dell, pursuant to notice, attended, and the board declined to erase his name from the books of registry, and thereupon a petition was filed by Mr. Fey in the Circuit Court for Calvert County praying that the name of Lawrence O'dell be erased from the book of registry of the precinct, and on the hearing of the appellee's petition an order granting the prayer of the petition was passed, from which this appeal was taken. Sections 23, 25 and 27, article 33 of the Code. It was agreed as a fact that Lawrence H. O'dell was a resident of Washington, D. C., up to April 1st, 1926, and that on that day he came into Maryland and, according to the affidavits of himself and his supporting witnesses, had ever since resided in the fourth precinct of the third election district of Calvert County, and that he did not make any declaration of intention to become a citizen of Maryland as required by the law prior to the passage of the Act of 1929, chap. 578.

It is provided by section 5 of article 1 of the Constitution

of Maryland, that: "The General Assembly shall provide by law for a uniform registration of the names of all the voters in this state who possess the qualifications prescribed in this article 1, which registration shall be conclusive evidence to the judges of election of the right of every person thus registered to vote at any election thereafter held in this state; but no person shall vote at any election, federal or state hereafter to be held in this state or at any municipal election in the City of Baltimore unless his name appears in the list of registered voters"; etc. By the Act of 1902, chap. 133, sec. 25B, all persons coming into Maryland with the intention of becoming citizens of the state should so declare their intention before the clerk of the circuit court of any of the counties or the clerk of the Superior Court of Baltimore City, at least one year before being entitled to registration as a voter, and the clerks were required to keep a record of all such declarations, the intent of such persons to become citizens of the state to date from the day on which such registry should be entered in such record book. It further provided that "no person coming into this state from any other state, district or territory shall be entitled to registration as a legal voter of this state until one year after his intent to become such legal voter shall be thus evidenced by such entry in such record book, and such entry or a duly certified copy thereof shall be the only competent and admissible evidence of such intent." With the exception of the provision in the Acts of 1922, ch. 97 (section 32, article 33 of the Code), whereby the declaration of intention might be made before the boards of registry in Baltimore City and certain counties in the state, though the same could still be made as theretofore, there was no change in the Act of 1902 until the Acts of 1929, ch. 578, so altered the provisions of the Act of 1902 as to destroy the uniformity of registration which the constitutional provision required.

The Act of 1929 repealed and re-enacted sections 31 and 32, article 33 of the Code, so that section 31 retained all the provisions of the Act of 1902 as to Baltimore and Prince George's counties, and section 32 made an entirely new pro-

vision for those who should come from other states into Baltimore City and the other twenty-one counties of the state with the intent to become citizens of Maryland. Section 32 provides that: "Any person who shall have removed into any county of this state in which section 31 of this article is not applicable, or into the City of Baltimore, from any other state, and who shall have actually had his or her residence within the borders of this state for the period of one year preceding the date of the election for which he desires to register, as hereinafter set forth, may prove the fact of his or her said residence in the following manner: On any of the registration days set forth in section 23 of this article, said applicant shall present himself or herself to the officers of registration when in session and shall make and sign an affidavit in substance as follows:

"I do solemnly swear that my full name is . . . . . . . . ; that I am a citizen of the United States; that I have resided in the . . . . . . Precinct of the . . . . . . Ward in the City of . . . . . . . . (or . . . . . . District of . . . . . . County), in the State of Maryland from the . . . . . . day of . . . . . . up to the . . . . . . day of . . . . . . . . , 19 . . . ; that I have not since acquired a legal residence, giving me the right to vote elsewhere; that I actually removed my residence into the State of Maryland from No. . . . . . . . . . . . . . Street, in the City or town of . . . . . . . . , State of . . . . . . . . . on the . . . . . . day of . . . . . . . . , 19 . . . , and that my intent to become a resident of the State of Maryland was formed on the . . . . . . . day of . . . . . . . . , 19 . . . , and has been continuous from that date up until the present time; that I have since the forming of said intent and establishment of said residence abandoned any legal residence theretofore had by me, giving me the right to vote elsewhere, and that I have not during the time of my residence within the State of Maryland, as herein set forth, voted in any other state, district or territory of the United States."

It provides that the applicant for registration shall then present an affidavit made and signed by two credible regis-

tered voters of the precinct or district stating the time they have personally known the applicant to have resided at the place stated therein. The board of registry also have the right to interrogate the applicant under oath and to summon his witnesses or any other persons for examination as to his right, intention and residence, before acting upon the application. "Said affidavits and evidence, if any, taken before said registry board shall be deemed to be competent and admissible evidence of said applicant's said residence and intention to become such resident."

In two counties of this state there is something more required of a citizen of another state, territory, or district, coming into Maryland, than the mere formation of an intention to become entitled to registration as a voter one year after coming into this state with the intention here to reside, and that is, the declaration of that intention to a clerk of the circuit court as a condition precedent to registration. In the others, no steps need be taken by the applicant coming from beyond the state until he applies for registration.

In the constitutional convention of 1867, on motion of Mr. Rider of Somerset County, it was "ordered that the committee on the elective franchise inquire into the expediency of incorporating in the constitution a provision for a uniform registration of voters within the State of Maryland, which shall be taken and held as the only evidence of the qualification of said voters at any election that may hereafter be held in the state." *Perlman's Debates of the Maryland Constitutional Convention of* 1867, p. 74. The question was warmly debated, as will appear from pages 232 to 239 of the same work, and resulted in the adoption of the present provision. It will be noted that the original order of Mr. Rider provided for "a uniform registration of voters," while the report of the committee as adopted into the constitution provided for "a uniform registration of all the voters in this state who possess the qualifications prescribed in this article." It will thus be seen that the convention intended the law to be enacted in pursuance of the provision to apply to all voters alike, and not to create a situation whereby a person coming

into one county of the state with the intention of becoming a resident and citizen should, after one year's residence, be entitled to vote, while another going on the same day into any one of twenty-one other counties, or into Baltimore City, if he should remove therefrom less than a year before the next ensuing election into Prince George's or Baltimore County, would be denied a vote because he could not obtain a certificate of intention in either of these counties. Section 31, article 33 of the Code. On the other hand, if the residence were first taken up in Prince George's or Baltimore County, and the party removed therefrom to any of the other twenty-one counties or to Baltimore City at least six months before the next ensuing election, he would be entitled to registration on complying with the provisions of section 32. But, say the appellants, there is no difference in any of the counties or in Baltimore City in the time of the formation of the intention, and the period of residence required to entitle one coming from another state to entitle him to register and thereby to vote in Maryland, the two sections (31 and 32) of the Acts of 1929, ch. 578, merely providing different rules of evidence of intention and residence for Prince George's and Baltimore Counties and the remainder of the state, and they cite *Pope v. Williams,* 98 Md. 59, as authority for this contention. As we view the opinion in that case, it has no adverse application here, but on the contrary supports the decision in the instant case. In *Pope v. Williams,* the question involved was the constitutionality of the Acts of 1902, ch. 133, sec. 25B (section 31, article 33 of the Code), which provided, by a general law, applicable in all its terms and provisions, to those who came into and took up their residence in this state, that they should not be entitled to registration as voters unless they declared their intention to become citizens before a clerk of any of the circuit courts of the counties or before the clerk of the Superior Court of Baltimore City, one year before the election next after such registration, and that act provided that the entry of the clerk "or a duly certified copy thereof shall be the only competent and admissible evidence of such intention." Attorney General John P. Poe, in his

brief, stressed the uniformity of the provisions of the statute in that case (page 65), and on appeal to the Supreme Court, 193 U. S. 621, where the decision of this court was affirmed. The appellants contend that the two sections (31 and 32), merely lay down different rules of evidence for the proof of the same facts, namely, intention and residence, and that it was so decided in *Pope v. Williams*. In the statute construed in that case there was only one way by which one coming into the state could be registered after having taken up a residence here, and that was to produce the certificate or record provided for, and it applied to all persons similarly situated ,and in every county of the state and in Baltimore City. It was one rule applying to one state of facts.

In the present case we have two rules whereby one voter may be registered and another, with the same qualifications, the same intention, and the same residence, may be denied a vote. A law which can produce such results at the same time cannot be called "uniform." In the opinion in *Pope v. Williams,* at page 66, it is said: "The Legislature of the State may regulate the method of registration by establishing an uniform system of registration in which the several steps to be taken by the applicant shall be prescribed, and the kind of evidence by which his right to be registered shall be established; provided, however, that under the pretense of regulating such procedure no person can be precluded or hindered from the complete enjoyment of his rights as guaranteed to him by the constitution of the state or of the United States."

In the case of *Langford v. County Commissioners of Somerset County,* 73 Md. 105, the question was as to the right of the Legislature to exclude certain counties from the provisions of the Australian Ballot Law, Acts of 1890, ch. 538. The majority opinion by Judge Alvey was careful to avoid saying anything which would affect the provisions of the registration section of the constitution when it said (page 117): "The constitutional provision (Const., art. 3, sec. 49), conferring upon the Legislature power to pass laws to regulate elections in the state, does not require that such laws should be uniform throughout the state. They must be free and equal

to all persons entitled to vote; but there is nothing in the Constitution to require the modal proceedings to be the same in every part and section of the state." That the court at that time was careful to distinguish between the power of the Legislature to legislate locally with regard to elections and uniformly throughout the state as to registration, and that it had this difference in mind at the time, is apparent also from the dissenting opinion of Judge Robinson (concurred in by Judge Irving), wherein he said: "So careful is the Constitution to preserve this equality that in the matter of registration of voters it provides that such laws shall be uniform." Page 128. And in *Mincher v. State*, 66 Md. 227, 232, in an opinion by Judge Miller, it is said: "The Constitution, art. 1, sec. 5, required the General Assembly to provide by law for a uniform registration of the names of all voters in the state, and made such registration conclusive evidence to the judges of election of the right of every person thus registered to vote, and declared that no person shall vote at any election unless his name appears in the list of registered voters."

The case of *Southerland v. Norris*, 74 Md. 326, was an appeal from an order dismissing the petition of the appellant to review the action of an officer of registration in striking from the registration list of Charles County the name of George E. B. Key, a former resident and voter of that county, who had removed to the District of Columbia without having made the affidavit of his intention not to abandon his residence in this state, as required by the Acts of 1890, ch. 573, sec. 14, which was state-wide in its application. After stating (page 329) that section 14 applied to all such persons, the opinion by Judge McSherry, commenting on the change in the law created by the Act of 1890 (page 331), said: "The section, therefore, merely changes the old rule of evidence, and substitutes a new and uniform one in its stead."

It will thus be seen that this court has always regarded uniformity as an essential of all registration laws, and that all the requirements of the Constitution should be literally carried out.

It was suggested that there might be some question of the validity of laws which provide for quadrennial registration in Baltimore, and for other times for general registration elsewhere in the state, but we fail to see the force of such argument as a precedent or authority for the contention of either side so long as the qualifications for registration are the same.

For the reasons herein stated, we hold the Acts of 1929, ch. 578, to be unconstitutional, from which it follows that sections 31 and 32 of article 33 of the Code, as they existed prior to the Act of 1929, shall have such effect as they had prior to that act.

*Judgment affirmed, with costs.*

BOND, C. J., and PATTISON and OFFUTT, JJ., dissent.