## STATE OF MARYLAND *vs.* MARION C. RICE.

*Licenses. Statutes; repeal and re-enactment; effect when re-en-acting law is void. Rights of citizens. U. S. Constitution, 14th Amendment. Declaration of Rights of Maryland, Art. 23. Acts of 1902, Ch. 160, relating to embalmers and undertakers; as amend-ed by Ch. 389 of the Acts of 1904, Ch. 496 of the Acts of 1908.*

The 8th section of Chapter 389 of the Acts of 1904, and Chapter 496 of the Acts of 1908, amending Chapter 160 of the Acts of 1902, requires in substance that before anyone be licensed as an undertaker he shall have spent at least two years prior to his application for a license in the employment of some person, firm or company, actively engaged in the work of *practical embalming* as well as undertaking, and that he should be skilled in said business. It was *held,* that the business of embalming was a separate work from that of undertaking, and that this requirement was unconstitutional because in violation of the fourteenth amendment to the Constitution of the United States and of the twenty-third Article of the Declaration of Rights of Maryland, which protect the

liberties, privileges and rights of citizens against undue legislative interference. p. 327

Where a repeal of a prior law is inserted in an Act in order to secure the unobstructed operation of such Act, and the repeal law itself is held to be void, then the provisions for the repeal of the prior law will fall with it, and will be operative in the appeal of such prior law. p. 327

Portions of sections of an Act should not be held to stand unaffected by the constitutional infirmity of other parts thereof, where it would be obviously contrary to the intention of the legislature so to do. p. 328

The Acts of 1908, Chapter 496, and the Acts of 1904, Chapter 389, amending sections 7 and 8 of the Acts of 1902, Chapter 160, are unconstitutional, and so also are the provisions of these acts extending that act beyond Baltimore City. p. 329

As it does not appear that sections 1, 2, 5, 9 and 11, as amended, are dependent upon section 8 as amended, they are not affected by this decision. p. 329

*Decided April 4th, 1911.*

Appeal from the Circuit Court of Frederick County (URNER, C. J., HENDERSON and MOTTER, JJ.).

*Isaac Lobe Straus, Attorney-General* (with whom was *Arthur D. Williard* on the brief), for the appellant.

*H. Dorsey Etchinson,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee was indicted in the Circuit Court for Frederick County under the Act of 1902, Chapter 160, as amended by Chapter 389 of the Acts of 1904, as further amended by Chapter 496 of the Acts of 1908, charged, in effect, with carrying on or conducting the business of undertaking in Frederick County without having first procured a license as required by the said statute and the amendments thereto. The traverser demurred to the indictment, upon the ground that the Act as amended is unconstitutional. The demurrer was sustained and judgment for the traverser was entered

thereon. It is from that judgment of the lower Court that this appeal is taken.

Chapter 160 of the Acts of 1902 consists of fourteen sections. The first section provides for the creation of a board to consist of seven members and to be known as the State Board of Undertakers of Maryland.

The second section states the required qualifications of its members, the manner and method of their appointment, the filling of vacancies, and the tenure of office.

Section third prescribes the oath to be taken by the members of the board.

Sections four and five relate to the organization of the board and the appointment of secretary.

Section six regulates the times of meeting and states the number necessary to constitute a quorum.

Section seven requires all persons, firms and corporations, and their assistants and employees, as therein provided, engaged in the business of undertaking at the time of the passage of the Act, to register with said board on or before the first day of July following.

Section eight provides that before any person, co-partnership or corporation should, after the passage of the Act, engage in the business of undertaking, and before any member of any such co-partnership, assistant or employee of any such person, co-partnership or corporation, or officer of such corporation whose duties would engage him or her in the care, preparation, disposition or burial of the dead, should discharge the duties of such business, employment or office; and before any of those named in the preceding section (section seven) who were engaged in the said business or employment at the time of the passage of the Act and who failed to register within the time named in the last preceding section, should continue in said business, they should apply to the board of undertakers for a license to practice such business and employment; and should the board find, upon examination, that the applicant is of good moral character, possessed of skill and knowledge of such business and has a

reasonable knowledge of sanitation, preservation of the dead, disinfecting the bodies of deceased persons, apartments, clothing and bedding, in case of death resulting from infectious or contagious diseases, the board should issue to said applicant, upon the payment of a fee of twenty dollars, a license to practice the business of undertaking. It also provided that licenses should issue to corporations when applied for, and that one license should suffice for all the members of a co-partnership when issued in the firm name.

Section nine provides for the revocation of licenses.

Under section ten all certificates issued under section seven and all licenses issued under section eight expired on the 30th day of April next ensuing the date of their issue, and thereafter before any person, co-partnership or corporation then engaged in the business of undertaking, or before any of the assistants, employees, or officers previously designated should continue in such business or employment, application should be made to the board for a license to carry on such business or to engage in the practice thereof, and upon the payment of a fee of five dollars a license similar to the one issued under section eight should be issued by said board to such applicant.

Section eleven provides that all violations of the Act are misdemeanors and provides penalties therefor.

Section twelve states the licenses to be non-transferable.

Section thirteen provides where the fees and fines shall go and the purposes for which they shall be used.

Section fourteen requires the board to report annually to the Governor of the State, stating what the same shall contain and what disposition shall be made of any funds left in their hands, and in conclusion provides that the Act shall apply only to Baltimore City.

Chapter 389 of the Acts of 1904 repealed and re-enacted only sections one, eight and nine of Chapter 160 of the Acts of 1902. Section one was amended to the extent of increasing the membership of said board from seven to eight. The amendment to section eight requires that the board of exami-

ners shall upon examination find in addition to what was required of the applicant under section eight of the Acts of 1902, "that he has been employed at least two years prior to said application by some person, firm or corporation actively engaged in the work of practical embalming and undertaking * * * and is possessed of skill and knowledge of the *said business.*" The amendment to section nine states the character of the testimony and the manner in which it shall be taken by the board in proceedings instituted for the revocation of the license.

Chapter 496 of the Acts of 1908 repealed and re-enacted with amendments sections two, five, seven, eleven and fourteen of Chapter 160 of the Acts of 1902, and also repealed and re-enacted with amendments section eight of that Act as amended by Chapter 389 of the Acts of 1904, and enacted two additional sections known as 14 A and 14 B.

The amendment to section two provides for the appointment by the Governor of seven members of the board, of whom at least five shall be residents of Baltimore City and two residents of the counties.

Section five is amended so as to provide for the appointment of inspectors and fixes the compensation they are to receive.

Section seven is amended so as to require all persons, co-partnerships and corporations engaged at the time of the passage of the Act (Chapter 496, Acts of 1908) in the business of undertaking *outside of the City of Baltimore,* in the State of Maryland, as were designated by section seven, Chapter 160 of the Acts of 1902, to register with the board on or before the first day of July following the passage of the Act of 1908.

Section eight is only amended to the extent of requiring the applicant to apply by petition in which he shall state whether he proposes to practice the said business as principal or as an assistant or employee.

Section eleven is amended so as to provide punishment for superintendents of cemeteries and other persons for the commission of the offenses therein named.

Section fourteen is amended by striking out the clause limiting the Act to Baltimore City, and to the extent of including within its provisions the inspectors, the appointment of whom is provided for in section five of this Act.

Section 14 A provides that the provisions of the Act shall apply to Baltimore City and to all counties other than those named in that section, and Frederick County is not so named.

Section 14. B provides that no member of the board shall be appointed from a county exempt from the provisions of this Act.

Sections seven and 14 A of Chapter 496 of the Acts of 1908 were amended by Chapter 399 of the Acts of 1910. Section 14 A was amended so as to exempt from the general Act only the counties of Calvert, St. Mary's and Charles. Section seven was amended by requiring the registration of those then engaged in the business of undertaking and their assistants and employees, as previously designated, outside of the City of Baltimore and the eight counties which had been brought within the provisions of the said Act of 1908. These Acts of 1910, however, were passed after the commission of the alleged offense charged against the traverser.

No objection was made to the formal sufficiency of the indictment; the demurrer only went to the validity of the statute under which the traverser was indicted. The traverser contending that the statute contravened both the Federal and State constitutions by reason of the burdens and conditions imposed upon him before he could obtain a license permitting him to engage in the business of undertaking.

The burdens or conditions complained of appear in section eight of the Acts of 1904, repealed and re-enacted by Chapter 496 of the Acts of 1908, which are not found in section eight of Chapter 160 of the Acts of 1902, and consist of the additional requirements and qualifications imposed upon and exacted of the applicant, that the board shall find upon due examination "that the applicant has been employed at least two years prior to said application by some person, firm or corporation actively engaged in the work of practical embalm-

ing and undertaking * * * and is possessed of skill and knowledge of the *said business."*

As was said by the learned Court below, "If the Act is a valid exercise of legislative authority it must be upon the ground that the qualifications it exacts for the practice of the vocation with which it deals have a reasonable relation to the public health or welfare." The Court below, as we gather from its opinion, construed the language of the statute that we have quoted above as meaning that it was necessary that the applicant, before he could obtain the license of undertaker, should be possessed of skill and knowledge in the business of embalming as well as in the business of undertaking. That the words *"said business"* mean the business of embalming and undertaking, and are not, as contended for by the State, limited in their meaning to the business of undertaking. The contention of the State being that the only additional burden placed upon the applicant by the Acts of 1904 as amended by the Acts of 1908, is the necessity for his employment for two years prior to his application by some person, firm or corporation actively engaged in the work of practical embalming and undertaking, and that he is only required to be possessed of skill and knowledge in the business of undertaking; that the words "said business" have reference only to the business of undertaking and that the only use of the word "embalming" in the Act is in connection with the work in which the applicant must have been engaged, and that the Act does not say that the applicant shall be skilled in said work, but possessed of skill and knowledge of said business, that is, the business of undertaking, the subject-matter of the Act. This we do not think the meaning of the statute.

The applicant is required to be employed for at least two years by a person, firm or corporation not alone engaged in the business of undertaking, but also of embalming. It is fair to assume that the purpose of this requirement is that he should acquire a knowledge of the business of embalming as well as that of undertaking, and when the statute provides

that "upon examination it is found that the applicant has been employed for two years prior to his application by a person, firm or corporation actively engaged in the work of practical emblaming and undertaking, and is possessed of skill and knowledge in said business," it would seem that the proper construction of that language would be that they are, upon examination, to find that he has been so employed, for the length of time required, in the work of embalming and undertaking and that he possesses the skill and knowledge of said business—embalming as well as undertaking.

It is true that in the original Act the skill and knowledge required were solely confined to that of undertaking, and that the business of undertaking was frequently referred to therein as "said business," but upon the introduction into the law, by section eight of the Acts of 1904, of this additional requirement or qualification of the applicant, the words "said business" following so closely after this requirement, wherein embalming was introduced, have reference, as we think, to the business in which his employer was engaged and in which he was required to serve, that is, the business of embalming and undertaking.

In our opinion the word "work" in the clause referred to is there used synonomously with the word "business," and in construing this Act should have that meaning. If so, the statute would read, that the applicant has been employed for at least two years prior to said application by some person, firm or corporation actively engaged in the *business* of practical embalming and undertaking, and is possessed of skill and knowledge of said business. But should the State be correct in its contention, even then we think it places upon the applicant a burden or condition that he should not be required to assume. If he is not to be subjected to an examination to ascertain his skill in both embalming and undertaking, he, nevertheless, is required, as a condition precedent to his obtaining his license as an undertaker, to give two years of his services in a work or business which is separate and independent of the business of undertaking and not neces-

sarily incident thereto, and the statute would be invalid even under this construction for the reasons hereinafter stated.

A statute of New York passed in 1905 provided that "Any person not already engaged in the business of undertaking, shall not engage in said business unless he shall have been duly licensed as an emblamer," etc. It is true that the statute now before us does not in so many words require that the applicant shall have a license for embalming, but it does require that he shall have been employed for at least two years in the work of embalming and shall be possessed of skill and knowledge in embalming, and the board shall so find before he can obtain a license as undertaker. Therefore, in effect, the statutes are similar.

The Court of Appeals of New York in passing upon this statute in the case of *People* v. *Ringe,* 197 N. Y. 143, said: "Power and authority exist in the Legislature to license and regulate certain vocations notwithstanding provisions of the Federal and State constitutions, but such power and authority are dependent upon a reasonable necessity for its exercise to protect the health, morals or general welfare of the State. The care of dead human bodies and the disposition of them by burial or otherwise is so closely related to the health and general welfare of a community that the business of caring for and disposing of such bodies may be regulated by license and special regulations under the general police power of the State.

"The danger that may arise from the body of a person who has died from some infectious, contagious and communicable disease or otherwise is to some extent obviated by the sanitary regulations of local boards of health; but such regulations are quite inadequate to protect the health and general welfare of a community unless the person who comes into immediate contact with the dead body and upon whose care and skill the public are principally dependent in preventing the spread of infection or contagion and protecting the health, good order and general welfare of a community, is selected with special reference to his skill, knowledge and experience.

"The Legislature can properly determine that undertakers bear such relations to the public health and welfare that they should be subject to regulations and license. But a statute passed pursuant to the police power should be reasonable. Its real purpose must be to protect the public health, morals or general welfare. A statute can not, under the guise of the police power, but really to effect some purpose not within such power, arbitrarily interfere with a person or a property right. The statute under consideration unnecessarily interferes in several particulars with that liberty of person and property guaranteed by the constitution.

"The work of an embalmer and that of an undertaker can, in most instances in the interest of economy and that orderly procedure desirable in the performance of such work, be done by the same person, but the public health does not require that an embalmer be an undertaker, or that an undertaker be an embalmer. The business of undertaking has been carried on for generations, particularly in the rural districts. by persons not holding embalmer's license and who have no special knowledge of the work of emblamers. There is nothing that occurs to us, or that has been called to our attention, to indicate any danger to public health in permitting a person otherwise qualified to carry on the business of undertaking solely because he is not a licensed emblamer."

The Supreme Court of Massachusetts in the case of *Wyeth* v. *Thomas,* 200 Mass. 474, a case very similar to the one before us, said: "No argument has been addressed to us to show that the general embalming of dead bodies is' necessary for the preservation of public health, and we know of no facts that indicate such a necessity. Except in those cases where embalming is desired for a special reason, we know of nothing connected with the duties of an undertaker that calls for the work of a licensed emblamer. When such work is desired, a proper person can be procured to perform it. In cases generally it is not an essential part of the duties of an undertaker and it has no relation to the public health."

The requirements that the applicant for license shall be possessed of skill and knowledge in undertaking, as well as a reasonable knowledge of sanitation, preservation of the dead, disinfecting the bodies of deceased persons, apartments, clothing and bedding in cases of death resulting from infectious or contagious diseases, are all within the proper exercise of police power because of their relation to public health, but as the requirement made of the applicant by section eight of Chapter 160 of the Acts of 1902, as amended by the Acts of 1904 and 1908, that he shall be possessed of skill and knowledge in the business of embalming, has no relation to public health, or to public morals, public safety or the welfare of the public, said section eight as amended is in violation of both the 14th Amendment of the Constitution and the 23rd Article of the Declaration of Rights of Maryland, which protect the liberties, privileges and rights of citizens against undue legislative interference.

Having decided that section eight of Chapter 160 of the Acts of 1902, as amended by the Acts of 1904 and 1908, is invalid, we are now to consider and determine whether section eight of the Acts of 1902 as originally passed is still in force, and how far the remaining sections of the Act, as amended by said succeeding Acts, are affected by the invalidity of section eight, occasioned by amendments under the repealing and re-enacting statutes.

1. This Court, in the case of *State* v. *Benzinger,* 83 Md. 481, stated correctly the well settled rule of law to be: "That where a repeal of a prior law is inserted in an Act in order to secure the unobstructed operation of such Act, and the repealing law is itself held to be void, the provisions for the repeal of the prior law will fall with it," and will not be operative in the repal of such prior law. Therefore section eight of the Acts of 1902 as originally passed, which does not contain the requirement that the licensee shall be possessed of skill and knowledge in the work of embalming, is not repealed by the succeeding Acts which are held to be void

because they contain such requirements, but stands in full force and effect as originally passed.

This section of the original statute, however, does not apply to Frederick County, but only to Baltimore City. It was by the amendment of section fourteen, by the Acts of 1908, that Frederick and other counties were attempted to be brought within the provisions of the general Act. The question therefore arises, will the amendment of section fourteen by the Act of 1908 be effective in extending the law to Frederick and other counties, while section eight as amended by the same Act is held to be void?

In the *Benzinger case* this Court, quoting from JUDGE COOLEY in the case of *Campau* v. *Detroit,* 14 Mich. 276, said: "Whether one part of the repealing law will be allowed to stand while others are declared void 'must depend upon whether, by the amendatory law, it is apparent that the Legislature intended them as inseparable parts of the same system, mutually dependent upon each other.' " Portions or sections of an Act should not be held to stand unaffected by the constitutional infirmity of other parts thereof when it would be obviously contrary to the intention of the Legislature to do so. We have no difficulty in this case in reaching the conclusion that it was not intended by the Legislature in passing the Act of 1908, including Frederick and other counties within the provisions of the general law, that section fourteen was to be operative independently of section eight as amended by that Act.

As was said by the learned Court below: "Under the original Act it was the duty of those already engaged in the undertaking business in Baltimore City to register under section 7 before July 1st, 1902, while those who failed to register by that time and those entering the business after the passage of the Act, were required to obtain a license after examination under section 8. It is thus apparent that these two sections are interdependent and supplemental and deal with periods ending and beginning respectively in 1902. The same is true of these sections as repealed and re-enacted by the

Act of 1908. In that Act the first of July, 1908, is the time limited for registration of those already engaged in the business, while those engaging in it after the passage of the Act were compelled to apply for licenses and submit to examination. It was manifestly not the intention of the Legislature that sections 7 and 8 as enacted in 1902 should apply to a practitioner of undertaking in Frederick County who was engaged in the business at the time of the passage of the Act of 1908 but who was not until then sought to be included within its operation, because it would be impossible for him to comply with a requirement in 1908 that he became registered before July 1st, 1902.

"If the attempt were made to give effect to sections 7 and 14, as amended by the Act of 1908, in conjunction with section 8, as validly enacted by the Act of 1902, we should have the law placed in the anomalous situation of providing for the first time in 1908 that no citizen of Frederick and the other seven counties affected should engage in the business of undertaking after the passage of the Act of 1902 without examination and license, but that if so engaged prior to the Act of 1908, such examination and license would not be required and registration alone would be sufficient. It is not to be supposed that such an inconsistency was within the legislative intent."

From what we have said, all the amendments to both sections 7 and 8 of the original Act must fall, and such sections are only to be operative and effective as originally passed and incorporated in the Act of 1902, and that all amendments extending the Act beyond Baltimore City are also inoperative because of the invalidity of section 8 as amended. As it does not appear that sections 1, 2, 5, 9 and 11, as amended, are dependent upon the validity of section 8 as amended, they are not affected by this decision. We therefore find no error in the ruling of the Court below, and the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*