(No. 33849.—

ELMO GHOLSON, Appellee, *vs.* C. HOBART ENGLE, Director of Registration and Education, Appellant.

*Opinion filed November 26, 1956.*

Latham Castle, Attorney General, of Springfield, (John L. Davidson, Jr., Mark O. Roberts, and Arthur Nebel, of counsel,) for appellant.

Conger & Goebel, of Carmi, (Ivan A. Elliott, Jr., of counsel,) for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

The plaintiff, Elmo Gholson, operates funeral homes in McLeansboro and Dahlgren. He is not a licensed funeral director, and he brought this action to restrain the Director of the Department of Registration and Education from enforcing against him the statute which makes it unlawful to direct funerals without a certificate of registration issued by the Department. His complaint alleged that the statute violates the Federal and State constitutions in many respects. After a trial the circuit court of Hamilton County held the act unconstitutional in its entirety, and the defendant appeals.

Article I of the act regulating funeral directing and embalming (Ill. Rev. Stat. 1955, chap. 111½, pars. 73.1-73.10a,) deals with funeral directors. Section 2 of that article defines the practice of funeral directing as "(a) The business of preparing, otherwise than by embalming, for the burial or disposal and directing and supervising the burial or disposal of dead human bodies. (b) The business of providing or maintaining a place for preparing for the disposition of dead human bodies or for caring for dead

human bodies prior to their disposition. (c) Using in connection with his name of business, the word 'funeral director,' 'undertaker,' 'mortician,' 'funeral home,' 'funeral parlor,' 'funeral chapel,' or any other title implying that he is engaged in the business herein described."

Section 4 of article I makes it unlawful to engage in funeral directing without a certificate of registration issued by the Department. To qualify for a certificate an applicant must (a) be at least 21 years of age and a citizen of this State, (b) be of good moral character and temperate habits, (c) be a holder of a certificate of registration as a registered embalmer, and (d) have passed an examination conducted by the Department.

Article II (Ill. Rev. Stat. 1955, chap. 111½, pars. 73.11-73.20,) deals with embalmers. Section 1 of that article defines the practice of embalming as "The embalming or representing or holding out oneself as engaged in the business of embalming of dead human bodies or the preparation for transportation of human bodies dead of a contagious or infectious disease." Section 2 makes it unlawful to practice embalming without a certificate of registration issued by the Department. To qualify for a certificate of registration as an embalmer, section 3 provides that an applicant must (a) be 21 years of age, (b) be of good moral character and temperate habits, (c) have successfully completed one academic year in an approved college or university, (d) have graduated from an approved school of embalming which requires as a prerequisite to graduation the completion of a course of study of at least nine months duration, (e) have studied embalming as a registered apprentice under a registered embalmer for at least one year, (f) have passed an examination conducted by the Department, and (g) be properly protected against communicable diseases. The qualifications for a registered apprentice embalmer are the same except that he need be only 18 years old, and instead of having completed his year

of apprenticeship he is required to have entered upon it.

Plaintiff's attack presses most strongly upon the provision that requires a funeral director to be a registered embalmer. That provision is pivotal. Its validity depends upon the interrelation of the activities of the funeral director and the embalmer, and upon the degree to which the activities of both are related to the public health and welfare.

When death occurs, a member of the family of the deceased usually calls the funeral director, who obtains such information as the name and age of the deceased, the name of the attending physician and the cause of death. He makes contractual arrangements for his services, secures the requisite information for newspaper funeral notices and obituaries, ascertains the names of the pallbearers and communicates with them, checks the availability of the officiating minister and the church, and makes arrangements for the burial. He assists in conducting the funeral service, and in moving the coffin to and from the hearse. If the body is to be shipped, he makes the arrangements.

The process of embalming was described by competent witnesses in a degree of detail not necessary here. Basically the process is one of eliminating liquids and gases, and substituting embalming fluid for blood. Cosmetics are applied, and restorative work involving the use of wax or other materials may be indicated. Embalming requires the exercise of discretion and judgment by the embalmer. It also requires a degree of special knowledge of anatomy, pathology at death and bacteriology. Where death results from a communicable or contagious disease, special knowledge and understanding are required. Skill is required in the plastic restoration, repair and preservation of human bodies to present as natural and lifelike an appearance as possible.

Whether or not a body will be embalmed, and if so by whom, is usually left to the discretion of the funeral director. After a body has been embalmed, the director

usually checks it visually or by touch at least twice a day. Conditions sometimes appear which require further attention by the embalmer.

Embalming is not compulsory in Illinois, but the practice has grown in recent years and is now almost universal. Even bodies which are creamated are usually embalmed. Embalming aids in the lifelike preservation of the body. And there is evidence in the record admitting of the construction that the wide acceptance of embalming is also related to the public health, and that the practice has grown, in part, because embalming aids in reducing the spread of disease.

When communicable diseases cause death, precautionary measures are required. The board of health is notified before the body is moved. Sanitary precautions are taken to protect both the embalmer and the funeral director. Private funerals are required when death results from such contagious diseases as bubonic plague, anthrax, psittacosis and cholera.

Two medical witnesses who had extensive experience testified that they did not know of any case where a contagious disease had been transmitted from a corpse to a human being. The possibility of such transmission was, however, admitted. They testified, further, that the danger of transmission would vary from case to case. The record discloses one recorded instance in California in 1926, in which two embalmers became infected with smallpox from embalming a body infected with the disease and became carriers. There was evidence to the effect that bacteria can be isolated and grown in cultures taken from corpses even after embalming.

Plaintiff concedes, and the authorities are clear, that the public interest, and particularly public health considerations, justify regulation of the handling of dead bodies. (*Prata Undertaking Co.* v. *State Board of Embalming,* 55 R.I. 454, 182 Atl. 808, 104 A.L.R. 389; *State* v. *Rice,*

115 Md. 327, 80 Atl. 1026; *Keller v. State,* 122 Md. 677, 90 Atl. 603; *Wyeth v. Board of Health,* 200 Mass. 474, 86 N.E. 925; *People v. Ringe,* 197 N.Y. 143, 90 N.E. 451.) Without question the activities of funeral directors and those of embalmers are subject to regulation. The disputed issue is whether the interest of the public carries further and justifies the compulsory partial merger of their activities by requiring that a funeral director have the knowledge, skill and training of an embalmer before he can direct a funeral. In our opinion it does not.

While the question is one of first impression here, many other courts have considered the validity of similar statutes or administrative regulations, and, with one exception, they have been held invalid. (*People v. Ringe,* 197 N.Y. 143, 90 N.E. 451; *State ex rel. Kempinger v. Whyte,* 177 Wis. 541, 188 N.W. 607; *State v. Rice,* 115 Md. 317, 80 Atl. 1026; *Wyeth v. Board of Health,* 200 Mass. 474, 86 N.E. 925; *Hart v. Board of Examiners,* 129 Conn. 128, 26 A.2d 780.) The exception is a Florida decision. (*State Board v. Cooksey,* 147 Fla. 337, 3 S.2d 502.) That was a proceeding to revoke Cooksey's license as a funeral director for failing to transport a body in a casket which conformed to the sample submitted, for making false representations, and for other misconduct. In the reviewing court Cooksey questioned the validity of the act under which he was licensed upon grounds that included the one here involved. The court said, "Appellee has cited a number of cases which appear to support his contention but we are not inclined to follow the reasoning of these cases. * * * When we consider the service which a funeral director is required to render to the public and the duty which he owes to the public to see that that service is properly, efficiently, honestly and promptly rendered, we can find nothing unreasonable or unwarranted in the statutory requirement that each funeral director shall be a licensed embalmer."

In the record before us there is no suggestion that the

requirement was imposed to meet economic ills in the undertaking business, or that excessive costs result when a funeral director hires an.embalmer instead of doing that work. An unsuccessful effort was made to prove that the general public believes that the funeral director does the embalming. But even if the effort had been successful, that circumstance could hardly justify the requirement without further proof that some deleterious consequence resulted from the disparity between the popular belief and the facts.

The record does not, in our opinion, establish that public health considerations justify the requirement that a funeral director be a licensed embalmer. The funeral director is concerned primarily with the amenities of the funeral service. Proper performance of his other functions, such as removing and dressing the body, ascertaining the cause of death, and inspecting the body while it is in the coffin, does not require a year of college, nine months at an embalming school and a year's service as an apprentice embalmer. Nor are these qualifications necessary in order that he may effectively supervise the work of the embalmer. Specialized training is not required in order to recognize the conditions that require further work on the part of the embalmer. We hold, therefore, that the circuit court was correct in determining that this provision violates section 2 of article II of the constitution.

The title of the act is "An Act in relation to the regulation of persons engaged in the practice of funeral directing and embalming, and to repeal an Act therein named." Plaintiff argues that because the title mentions both funeral directors and embalmers it contains more than one subject, in violation of section 13 of article IV of the constitution. The subject of the act, however, is the regulation of those who handle the bodies of deceased persons in connection with their burial, and the fact that both of the occupations that are engaged in that activity are mentioned in the title

does not mean that more than one subject is involved.

Plaintiff also challenges those provisions of the act that establish an apprentice system for embalmers and require funeral directors to have, or be employed in, a fixed place of business. Since plaintiff does not seek a certificate as an embalmer, and we have held that he need not have one in order to receive a certificate as a funeral director, he is not affected by the requirement that embalmers serve an apprenticeship. Nor is he affected by the provision directed at itinerant funeral directors, for the record shows that he owns a mortuary. "A court will consider the validity of a statutory provision only at the instance of one who is directly affected by it, [citations,] unless, indeed, the unconstitutional feature is so pervasive as to render the entire act invalid." *People* v. *Reiner,* 6 Ill.2d 337, 341.

Plaintiff argues that the section relating to the conduct of examinations unlawfully delegates power. "The Department shall hold examinations of applicants for certificates of registration as registered funeral directors at such times and places as it may determine. The examination may include both practical demonstrations and written and oral tests and shall embrace the subjects of sanitary science, health regulations in relation to the handling of dead human bodies, measures used by funeral directors for the prevention of the spread of diseases, and such other subjects relating to the care and handling of dead human bodies as the Department by rule may prescribe." (Ill. Rev. Stat. 1955, chap. 111½, par. 73.6.) Specifically, the plaintiff argues that it would be futile to take the examination for a funeral director's certificate because the board is authorized to include questions covering the field of embalming, and is not limited to questions concerning the qualifications of funeral directors. Plaintiff has not taken the examination, and we cannot assume improper questioning by the board. Plaintiff has not been injured or affected by this section of the statute, and is therefore precluded from

questioning its constitutionality. *People* v. *Reiner,* 6 Ill.2d 337, 341; *Elliott* v. *University of Illinois,* 365 Ill. 338, 346; *Kettles* v. *People,* 221 Ill. 221, 233; *Williams* v. *People,* 121 Ill. 84, 90.

The trial court held the entire act invalid. In our opinion, however, the provision which requires that funeral directors hold certificates as embalmers is not so integrated with the other provisions of the statute as to make the whole act unconstitutional. (See Ill. Rev. Stat. 1955, chap. 111½, par. 73.30.) The act can readily be administered without that provision. For this reason the decree must be reversed and the cause remanded, with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*